**Affirmed and Opinion Filed January 14, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-20-00415-CR

**CHRISTIAN PRICE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F18-76441-K**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Carlyle
Opinion by Justice Myers

Appellant Christian Price was convicted by a jury of aggravated assault with

a deadly weapon. The trial court assessed punishment at forty years in prison. In

two issues, appellant argues the court erred in admitting extraneous offense evidence

and that the sentence is illegal. The State brings two cross-points requesting

modification of the judgment. As modified, we affirm.

### DISCUSSION

### 1. Extraneous Offense Evidence

In his first issue, appellant contends the trial court's admission into evidence

of a 2017 extraneous aggravated assault offense in the State's case-in-chief was an

abuse of discretion and a violation of rule 404(b). The State responds that the court did not abuse its discretion because appellant opened the door to the disputed evidence and, even assuming the trial court erred, appellant was not harmed.

Appellant was indicted for aggravated assault with a deadly weapon involving family violence. *See* TEX. PENAL CODE § 22.02(b). The indictment alleged that on or about October 7, 2018, appellant intentionally, knowingly, and recklessly caused bodily injury to Loy Lowe by shooting her with a firearm, and that he used or exhibited a deadly weapon, a firearm, during the commission of the assault. The indictment further alleged appellant "has and has had" a dating relationship with Lowe and that he was a member of Lowe's family and household.

While cross-examining Lowe during the State's case-in-chief, appellant's trial counsel questioned her about her prior relationship with appellant and if appellant had ever abused her:

> Q. And just so we're clear, when you and [appellant] were together, he never hit you, he never pushed you, he never put his hands on you in any form or fashion; is that correct?
>
> A. No, he didn't.
>
> Q. So for him to pull a weapon on you, would be totally out of character; is that correct?
>
> A. Yes.
>
> Q. Okay. He had never harmed you in any way before; is that correct?
>
> A. Not physically. He's never physically touched me.

Appellant testified during the defense's case-in-chief. Prior to testifying, the

trial court admonished him about his right not to testify, including that if he testified the State would be able to ask him "about everything." The relevant portion of the record reads as follows:

> THE COURT: All right. We're back on the record in Cause Number F18-76441, styled the State of Texas versus Christian Price. Mr. Price, I want to talk to you and your lawyer may also want to address you about, you know, your right not to testify, how you don't have to do it. But more so than that, I think you know you don't have to testify. You understand that if you do testify, when you get on the stand, your lawyer's going to ask you things that he wants to bring out because that's his job. And then the State's going to ask you all kinds of things that won't be nice and that you don't want to talk about like, you know, anything that's ever happened in your history that might put you in a bad light or, you know, criminal history, or just anything else you've ever done in your life, including spitting on the sidewalk. They can ask you that kind of stuff. They don't have to ask about what we've talked about now. They can ask about everything.
>
> Sir, do you understand that?
>
> THE DEFENDANT: Yes, ma'am
>
> THE COURT: All right. And I know your lawyer has talked to you about it. Knowing and understanding that, do you still want to testify?
>
> THE DEFENDANT: Yes, ma'am.

When the trial court asked defense counsel if he had any questions, he replied:

> No, Your Honor. I think that covers that issue. The only other issue we had was that the State has informed me that they feel that the door has been opened to [appellant]—to a pending case, based on my question of asking [Lowe] was that out of his character. And if they want to ask him, did he commit this other offense, that's fine. But I think they also want to introduce pictures and police reports from the other case, which I would be objecting to.

The trial court reviewed the relevant testimony before listening to the arguments of counsel. The State argued it should be allowed to question appellant

about a pending extraneous offense, i.e., that he used a firearm to beat another woman. The State argued that defense counsel's question, "So for [appellant] to pull a weapon on you, would be totally out of character," left a false impression with the jury about a character trait of appellant, and "that it would be out of character for [him] to pull that firearm out." Defense counsel argued that the question referred to by the State was specifically about appellant's character towards Lowe, not appellant's character in general, and that the State should not be allowed to ask him questions about the pending extraneous offense. The trial court concluded that "because it's wide open, I would say you can talk about it, but out of an abundance of caution, I won't let you put pictures in."

Appellant testified and denied shooting Lowe. On cross-examination, the prosecutor asked him if he had had relationships with other women while dating Lowe—in particular, with Margery West—and appellant agreed he had. Appellant also agreed he had a family violence case involving West, but he testified he did not know about the case until he had been arrested in this case. Defense counsel objected to the State's questioning, arguing, "We're going beyond the scope and getting into 404(b) stuff that's inappropriate at this time." After an off-the-record discussion at the bench, the State asked appellant about a pending charge for aggravated assault against West:

> Q. After you got arrested, were you or were you not aware of a warrant for an aggravated assault case against Margery West?
>
> A. I was notified of it once I was arraigned. And once I was arraigned

about it, I immediately asked why, because I didn't have no aggravated assault charge.

Q. Now, that case is from 2017; is that correct?

A. Yes. On the indictment it's 2017.

Q. Okay. And your attorney earlier asked the question, right, if that is out of your character to pull that firearm, right?

A. Yes.

Q. And in that case there's a firearm alleged in that case; isn't that right?

A. Yes, it is, but it's a lie.

Q. Okay. So it was not true that she was assaulted with a firearm in 2017?

A. Right. It's not true.

Q. Okay.

The jury charge for the guilt-innocence phase contained the following limiting instruction:

> You are instructed that if there is any testimony before you in this case regarding [appellant] having committed offenses, if any, other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed; and even then you may, only consider the same in determining the intent, knowledge, design, scheme, or system of the defendant, if any, in connection with the offense on trial and for no other purpose.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). The general rule is that except for prior convictions admitted under rule 609, extraneous offense

–5–

evidence is not admissible to impeach a testifying defendant. *See* TEX. R. EVID. 608(b); *see also* TEX. R. EVID. 609. The defendant can, however, "open the door" by leaving a false impression with the jury about a relevant act or character trait, and evidence of an extraneous act that tends to rebut the false impression may be admissible to impeach the defendant, but with a limiting instruction informing the jury it may use the extraneous offense evidence to gauge the defendant's credibility. *See Daggett v. State*, 187 S.W.3d 444, 452–53 (Tex. Crim. App. 2005); *Rivera v. State*, 233 S.W.3d 403, 406 (Tex. App.—Waco 2007, pet. ref'd).

In this case, the trial court could have determined defense counsel's question to Lowe ("So for [appellant] to pull a weapon on you, would be totally out of character; is that correct?") and the answer it elicited from Lowe left a false impression with the jury that pulling a gun on any person, not just on Lowe, was totally out of appellant's character. *See Daggett*, 187 S.W.3d at 453, n.24. Appellant's defensive theory at trial was that he was not a violent person and was not the person who shot Lowe. The trial court reviewed the relevant portion of the record before determining the extraneous offense was admissible. The court did not explicitly rule appellant had opened the door to the offense, but it said that "because it's wide open, I would say [the State] can talk about it," and that the State could not present photos of the crime. The court also provided the jury with a limiting instruction in the charge. The trial court was in the best position to understand the tenor of defense counsel's question, and it did not abuse its discretion in overruling

–6–

the objection and admitting the extraneous offense evidence.

Furthermore, were we to conclude the trial court erred in allowing the State to question appellant about the 2017 aggravated assault charge, appellant was not harmed.

The erroneous admission of evidence generally constitutes non-constitutional error. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We disregard a non-constitutional error if it does not affect substantial rights. TEX. R. APP. P. 44.2(b). In assessing the likelihood that the jury's decision was adversely affected by the error, we must "consider everything in the record," including the defendant's guilt. *Motilla*, 78 S.W.3d at 355.

Reviewing the record, we first note that defense counsel agreed the State could ask appellant "did he commit this other offense, that's fine." Counsel objected to the State presenting pictures and police reports from the case, and the court restricted the State from doing so. The State also spent little time questioning appellant about the extraneous offense. It asked appellant if he committed the 2017 offense involving West, and, pursuant to the court's ruling, did not offer proof of the offense through photographs or offense reports. The State did not mention the offense during closing arguments at guilt-innocence. In addition, appellant testified on direct that he had been to prison twice before for two additional offenses—burglary of a habitation and possession of a controlled substance with intent to deliver. He also admitted on cross-examination that he had pleaded guilty to a 2015 assault

family violence case involving Margery West. Moreover, the trial court provided a limiting instruction regarding extraneous offenses in the jury charge.

Additionally, the State presented substantial evidence of guilt. The jury heard about the tumultuous relationship between appellant and Lowe, their breakup, and appellant's threat "to have some girls beat [Lowe] up." The jury saw the security camera video from a gas station—recorded minutes before the shooting—depicting appellant exiting a black SUV and confronting Lowe in her car while attempting to reach into the waistband of his pants. The jury saw the SUV speed after Lowe's car as it exited the gas station parking lot. Lowe also testified about how she was driving fast but the SUV caught up with her car, and as it passed by, she saw the back window roll down. Appellant pointed a black gun at her; she heard a "pop"; she saw smoke come out of the gun. Lowe suffered a gunshot wound to her shoulder.

After reviewing the record, we conclude that even if we assume the trial court erred, the alleged error did not influence the jury or had a slight effect. We overrule appellant's first issue.

## 2. Illegal Sentence

In his second issue, appellant argues the sentence of forty years was illegal because the trial court did not make any findings on the two enhancement paragraphs. Appellant's argument is that because the trial court did not find the two enhancement paragraphs in the indictment to be true, the sentence it imposed was outside the range of punishment and, therefore, illegal. The State responds that

appellant's argument is without merit.

Aggravated assault with a deadly weapon is a second-degree felony, punishable by confinement for no more than twenty years or less than two, and a fine not to exceed $10,000. *See* TEX. PENAL CODE §§ 12.33, 22.02(b). Section 12.42(d), however, provides that a defendant's punishment is increased to confinement for twenty-five to ninety-nine years if he has previously been convicted of two felony offenses and the second offense occurred after the first conviction became final. *Id.* § 12.42(d).

The indictment in this case contains two enhancement paragraphs alleging prior felony convictions for possession of a controlled substance with intent to deliver and burglary of a habitation. Appellant elected to have the trial court assess punishment. At the punishment phase, the enhancement paragraphs were read aloud, and appellant entered his pleas of not true. The State then offered evidence the two convictions belonged to appellant through a certified judgment in the burglary case, a pen packet in the controlled substance case, and the testimony of a Dallas County District Attorney's Office investigator.

The record reflects that both parties were aware appellant faced enhanced punishment because of the two prior convictions. During his closing arguments at punishment, defense counsel acknowledged his "understanding that this case normally carries a punishment range of 2 to 20, but because of [appellant's] prior record it's 25 to 99." The State also noted that the punishment range in the case was

"25 to 99."

After listening to closing arguments, the trial court sentenced appellant as follows:

> THE COURT: All right. Is there any legal reason why your client should not be sentenced at this point?
>
> [DEFENSE COUNSEL]: No, Your Honor.
>
> THE COURT: All right. Then, having heard all the evidence and argument from both sides, I assess your punishment at 40 years confinement in the Institutional Division. Now, the sheriff will take you where you will be safely held until TDC can come and retrieve you. We're adjourned.

There were no objections to the sentence imposed.

A trial court is not required to make an oral pronouncement of its findings on enhancements when it alone assesses punishment. *See Meineke v. State*, 171 S.W.3d 551, 557 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *Seeker v. State*, 186 S.W.3d 36, 38 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *Dawkins v. State*, No. 05-16-00101-CR, 2017 WL 3301784, at *2 (Tex. App.—Dallas Aug. 3, 2017, no pet.) (mem. op., not designated for publication); *Bursey v. State*, No. 05-15-01050-CR, 2016 WL 4083185, at *2 (Tex. App.—Dallas Aug. 1, 2016, no pet.) (mem. op.). "Although it is preferred that trial courts read the enhancement paragraphs orally and find them to be true or not true on the record, a trial court does not err by not doing so." *Seeker*, 186 S.W.3d at 38; *see also Dawkins*, 2017 WL 3301784, at *2. "A trial court makes an implied finding of true to an enhancement allegation when the record establishes the truth of that allegation." *Torres v. State*,

–10–

391 S.W.3d 179, 183 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing, in part, *Almand v. State*, 536 S.W.2d 377, 379 (Tex. Crim. App. 1976)); *Dawkins*, 2017 WL 3301784, at *2. In addition, "appellate courts have concluded that a trial court implied a finding of true to an enhancement allegation if the sentence imposed was outside of the range for the underlying offense but was in the range for the offense as enhanced by a prior conviction to which the defendant has confessed." *Torres*, 391 S.W.3d at 183; *Dawkins*, 2017 WL 3301784, at *2.

In this case, the forty-year sentence imposed by the trial court is outside of the punishment range for a second-degree felony but within the range for a felony enhanced by two prior felony convictions. Under these circumstances, we conclude the trial court impliedly found the enhancements to be true, and that the sentence imposed was within the allowable punishment range and, thus, legal. *See Torres*, 391 S.W.3d at 183; *Dawkins*, 2017 WL 3301784, at *2. We overrule appellant's second issue.

### 3. State's Cross-Points

Turning to the State's two cross-points, the first cross-point asserts that the judgment incorrectly lists "N/A" under appellant's pleas to the two enhancement paragraphs and the trial court's findings on those paragraphs. The record reflects that appellant entered pleas of "not true" to the paragraphs and, as discussed earlier, the trial court made implicit findings of true. We have implied such a finding in similar circumstances and modified the judgment accordingly. *See, e.g., Butler v.*

–11–

*State*, No. 05-17-00420-CR, 2018 WL 797409, at *2 (Tex. App.—Dallas Feb. 9, 2018, no pet.) (mem. op., not designated for publication); *Hernandez v. State*, No. 05-16-00599-CR, 2017 WL 2871428, at *9 (Tex. App.—July 5, 2017, pet. ref'd) (mem. op., not designated for publication).

We have the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information before it to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we modify the judgment to reflect that appellant pleaded not true to the two enhancement paragraphs and that the trial court found the enhancement paragraphs to be true.

The State's second cross-point asks us to modify the judgment to include a finding of family violence under article 42.013 of the Texas Code of Criminal Procedure, which states:

> In the trial of an offense under Title 5, Penal Code, if the court determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case.

TEX. CODE CRIM. PROC. art. 42.013.

The trial court is statutorily obligated to enter an affirmative finding of family violence if, during the guilt phase, it determines the offense involved family violence as defined by section 71.004. *Butler v. State*, 189 S.W.3d 299, 302 (Tex. Crim. App.

–12–

2006). The court has no discretion in the matter, nor does the prosecutor have the discretion to seek such a finding. *See Coronado v. State*, No. 05-16-01001-CR, 2017 WL 6503092, at *6 (Tex. App.—Dallas Dec. 18, 2017, pet. ref'd) (mem. op., not designated for publication); *Daraghmeh v. State*, No. 05-13-01127-CR, 2014 WL 7269924, at *5 (Tex. App.—Dallas Dec. 22, 2014, no pet.) (mem. op., not designated for publication). Under section 71.004, "family violence" includes dating violence as defined in section 71.0021, which, in turn, includes "an act, other than a defensive measure to protect oneself, by an actor that (1) is committed against a victim . . . with whom the actor has or has had a dating relationship . . . and (2) is intended to result in physical harm, bodily injury, assault," among other things. Tex. Fam. Code § 71.0021(a). "Dating relationship" means "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." *Id.* § 71.0021(b).

Aggravated assault with a deadly weapon is an offense against the person under Title 5. Tex. Penal Code § 22.02(b). Furthermore, the indictment alleged that appellant and Lowe had a dating relationship, and undisputed evidence at trial showed appellant and Lowe dated on-and-off for approximately two years immediately prior to the shooting. Therefore, we sustain the State's second cross-point and modify the judgment to add an affirmative finding of family violence under article 42.013 of the Code of Criminal Procedure in the "Special Findings" section of the judgment. *See* Tex. R. App. P. 43.2(b); *Bigley*, 865 S.W.2d at 28; *French*, 830

–13–

S.W.2d at, 609; *Asberry*, 813 S.W.2d at 529–30; *Herrera v. State*, No. 05-19-00021-CR, 2020 WL 4435309, at \*16 (Tex. App.—Dallas  Aug. 3, 2020, no pet.) (mem. op., not designated for publication); *Coronado*, 2017 WL 6503092, at \*8.

We affirm the trial court's judgment as modified.


/Lana Myers//
LANA MYERS
JUSTICE


200415f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

CHRISTIAN PRICE, Appellant

No. 05-20-00415-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F18-76441-K.
Opinion delivered by Justice Myers. Justices Partida-Kipness and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Under the heading "1st Enhancement paragraph," "N/A" is deleted and "Not True" is substituted;

Under the heading "Findings on 1st Enhancement Paragraph," "N/A" is deleted and "True" is substituted;

Under the heading "2nd Enhancement paragraph," "N/A" is deleted and "Not True" is substituted;

Under the heading "Findings on 2nd Enhancement Paragraph," "N/A" is deleted and "True" is substituted; and

In the "Special Findings" section on page 2, the following language is added: "The Court enters an affirmative finding that Defendant's offense involved family violence, as defined by Section 71.004, Family Code."

As **REFORMED**, the judgment is **AFFIRMED**. The trial court is directed to prepare a corrected judgment that reflects these modifications.

Judgment entered this 14th day of January, 2022.